Josè Trujillo Lange et ux., Plaintiffs and Appellants, *v.* Josè López Fernández, Defendant and Appellee.

No. 6372. Argued November 16, 1933.—Decided November 29, 1933.

*José Sabater* for appellant. *J. Alemañy Sosa* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

This is an action for the abatement of an alleged nuisance, claimed by plaintiffs to be of a public character. It is substantially alleged in the complaint that the plaintiffs are the owners of a house and lot located at the corner of Tendal and Rosa Streets; that the house is marked with number 1 on the former street and with number 83 on the latter street,

and was built prior to the year 1898; that the said Tendal Street upon which the house abuts on its western side has been a public thoroughfare from time immemorial and was formerly known as "Camino del Tendal" because it led to the old Tendal, owned by Alfredo Cristy; that from time immemorial said road designated as Tendal was a public road, dedicated ever since to the public use of pedestrians and vehicles; that Tendal Street begins at Rosa Street now called De Diego Boulevard, starting from the southern corner of the plaintiffs' house, where it has a width of 8.75 meters, and in its extension from north to south up to the house of Blanes Successors, has a length of 29.30 meters; that on October 16, 1931, the defendant, José López Fernández, personally, with a pick and a spade, began to clear a shrubbery and to refill that part of Tendal Street lying in front of the house owned by the plaintiffs; that the plaintiffs objected to that work because the same pertained to the municipal authorities of Mayagüez, but the defendant refused to stop it; that subsequently the defendant erected a corrugated-iron fence which completely obstructs traffic along Tendal Street; that due to said obstruction, the plaintiffs are prevented from entering their house through Tendal Street, and that plaintiff José Trujillo Lange has applied to the mayor of said city and to the municipal engineer of public works, requesting them to demolish the fence that obstructs Tendal Street, as said street is a public thoroughfare; but that the mayor has done nothing, and that said plaintiff then applied to the district attorney who has taken no action either to remove said obstruction; that if said fence were allowed to remain in Tendal Street the defendant would cause irreparable damage to the general public and to the plaintiffs, who would be prevented from using, as they have used from time immemorial, the said street, and it would cause a multiplicity of suits and proceedings, for plaintiffs are prevented from entering or leaving their house through Tendal Street as they had done in the past; that the obstruction erected by the defendant

reduces by 50 per cent the value of the plaintiffs' house estimated at $5,000; and that the plaintiffs have no speedy, adequate, and effective remedy other than their petition for injunction to abate the said nuisance.

The defendant alleged that the lot on which stands the house occupied by the plaintiffs, as well as the lot owned by the defendant, formed part of a property containing 468 square yards (*varas cuadradas*), that is, 18 yards on its principal front abutting on Rosa Street, now De Diego Boulevard, by 26 yards in depth, which property had been segregated from another tract with an area of 71,022 square yards, formerly owned by the Guenard Succession; that said property of 468 square yards was awarded to Mrs. Eugenia Antonia Guenard y Carrié, who sold one-half thereof or 9 meters in front by 26 in depth, which is the lot wherein the house occupied by the plaintiffs is situated and formerly belonged to Nicomedes Sánchez and his wife, Anastasia Ramos, and thereafter to Margarita Avilés, mother of the plaintiff Antonia Lange Avilés de Trujillo; that the remaining 234 square yards, that is, 9 yards in front by 26 in depth, had been sold to the defendant by Mrs. Guenard y Carrié, by a deed executed in the city of Mayagüez before Notary Mariano Riera Palmer, on August 10, 1908; that the lot sold to Sánchez and subsequently conveyed to the mother of the plaintiff, Mrs. Trujillo Lange, is bounded on the west by the lot purchased by the defendant and that said lot belonging to the defendant is bounded on the west by the extension of San Agustín Street; that when he purchased said lot, in 1908, it was a precipitous place, used as a dumping ground, and inaccessible to passage in any kind of vehicle, but as the defendant operated at that time a public coach service for the transportation of passengers, with an office situated in the yard of his home, located at San Agustín Street, he decided to gradually fill a part of said lot in order to provide a passage through it to Rosa Street; that accordingly he refilled and paved an alley 3 meters wide, more or less, which he used

since that time, or about 20 years ago, as a way of egress for his carriages to Rosa Street, and thence to the center of the city, and that through mere tolerance and indulgence he has allowed other persons to take a short cut from the extension of San Agustín Street through said alley to Rosa Street or vice versa; that he has devoted the remaining portion of the lot for the cultivation of banana, arums, and other products which have gradually disappeared as the lot has been refilled, until now the land is no longer tillable; that the last refilling work on said lot was done in October, 1931, using for this purpose certain debris disposed of by the Municipal Hospital.

The lower court dismissed the complaint on the merits, on the grounds that the defendant was the owner of the land lying to the west of the house and lot belonging to the plaintiffs and that said land has never been a street or public road. The court added that the defendant, through mere tolerance, complacency, or indulgence permitted the passage of that part of the land which is paved. In so far as there was any conflict in the evidence, the lower court resolved such conflict against the plaintiff, due to the character of the testimonial evidence in regard to the particulars of the matter covered by such evidence.

The appellants urge, in the first place, that the lower court erred in ambiguously declaring that it had adjusted the conflict in the evidence when really there was no conflicting evidence, since the evidence of the plaintiffs and even that of the defendant support and prove the plaintiffs' case. In the second assignment of error it is stated that the lower court has decided the case at bar upon a question of law, as if an action of revendication were involved, where, as according to the law and the jurisprudence, it was bound to decide it upon the facts in favor of the public in general and of the plaintiffs.

The parties are not in accord in so far as the evidence is concerned. Certain discrepancies are observed which, in

our opinion, were correctly weighed by the court, since the weak evidence adduced by the plaintiffs can not bear comparison with the clear and strong evidence produced by the defendant. Plaintiff Jesús Trujillo Lange, and his witness Eusebio Castro, testified that part of the defendant's lot was used as a road for vehicles before López Fernández had acquired said lot. Castro testified that since 1876 carts passed over it. This testimony is in conflict with that given by the defendant and with the map of the city of Mayagüez drawn in 1888. In this map there appears the extension of Rosa Street towards the west, starting at Mirasol Street for a distance of 90 meters without reaching the defendant's lot. The alley claimed by the plaintiffs to be a street or public road is not shown in the map. The land occupied by the defendant's lot is designated in the map as "shrubbery" (*vegetación*), a fact which is clearly observable and was stated by José R. Acosta, municipal engineer. Today Rosa Street starting at Mirasol Street extends in a westerly direction, for a distance of 140 meters up to the house of Trujillo Lange.

The plaintiffs think that the court should have only decided the questions of fact without going into the questions of law arising from the evidence offered. We can not see how a just decision can be made in this case if we overlook the questions of fact and the rights of the defendant. The lower court declared that the defendant is the owner of the lot that comprises the alleyway which the plaintiffs consider as a street or public road. This is a question of fact, and starting from this premise the lower court concluded that the defendant had never divested himself, whether wholly or partially, of the ownership thereof. The conclusions made by the lower court are the result of the evidence offered, which is clearly in favor of the defendant.

The evidence, in our opinion, shows that at the time the defendant purchased the lot, there was a way or road about 1½ meters wide, through which pedestrians could cross to Rosa Street. The defendant widened the way, paving it so

that his carriages could pass over it. It has not been shown that the defendant has performed any acts limiting his ownership over the land in question. At the present time, said alleyway is 9 feet wide in the part thereof abutting on Trujillo Lange's property, as shown by the evidence, especially by the testimony of the municipal engineer José R. Acosta, who also stated that traffic thereon was scarce, and that only one vehicle, one carriage or one automobile could pass at a time. No person, other than the plaintiff, appears to complain of having been deprived of any right because of the closing of said alley. The municipal authorities and the district attorney were notified of the alleged public nuisance and they have taken no action. Stress is laid upon the testimony of Acosta who, upon being asked whether the alleyway was recorded in the municipality, answered: "It appears in the map drawn in 1929; but not in the deeds and other papers." The witness Oscar Castro testified that since 1921 he has been Municipal Auditor of Mayagüez; that in accordance with the records of his office the municipality has never spent any money in the upkeep of the alleyway in question, also called "Callejón del Aguacate." Antonio Olivencia, municipal secretary of Mayagüez since 1921, testified that he knew Mr. Trujillo Lange and was also familiar with Santa Isabel Street, and likewise with the land lying to the west of the house where the plaintiff lives. Regarding the alleyway in question, he stated that "by reason of this incident he looked up the records of his office and that there was nothing to show that said alleyway was the property of the municipality." He added that he knew the land upon which said alley has been located for over thirty years, and that formerly it could only be passed on foot, but that subsequently it was widened and carriages passed over it; the land was paved about twenty years ago. There is no showing that the municipality has acquired the ownership of said alley by virtue of any title. On this point there is a total lack of proof. The only person who appears as holder of the title to the

land is the defendant. Mere tolerance in the use of that road can not have the effect of limiting the ownership of the defendant over that land.

Acosta did not testify, as the plaintiffs claim in their brief, that Tendal Street is designated by some people as "Callejón del Aguacate" and by others as "Santa Isabel Segunda." The witness stated that the alley known as "Aguacate" starts at Rosa Street, where there is a curve, and leads to a wider street on the north, "a street now called 'De los Millonarios'" and which, as he had heard, was designated by some people as "Tendal" and by others as "Santa Isabel Segunda." It can be clearly seen that Acosta confined himself to the statement that said Aguacate Alley leads to a street which was formerly called Tendal or Santa Isabel Segunda Street and is now called De los Millonarios Street. The plaintiff Trujillo stated that his house is bounded on the west by Tendal Street and the defendant refers to an alley lying to the rear of San Antonio Hospital, and bordering on the west side of his house. This house stands on a lot having a frontage of 11.79 meters and a depth of 25.8 meters, which was acquired partly in 1896 and partly in 1900, as appears from a dominion-title proceeding decided in 1914. The conclusion reached by counsel for the plaintiffs to the effect that said alley existed in 1896 and in 1900 is not warranted by the documentary evidence, since the alley is mentioned in 1914 in describing in a consolidated form the two parcels theretofore separately acquired. The plaintiffs lay great emphasis upon this mention of the alley. The defendant testified that the street lying in front of his house is called Tendal but that it is an extension of San Agustín Street. On this point the testimony is not as clear as might be desired. However, there is a fact which clearly shows the position of the defendant's lot, wherein the alleyway is located, in relation to the house and lot belonging to the plaintiffs. In the deed of sale from Eugenia Antonia Guenard y Carrié to the defendant, executed under No. 424 before Notary Mariano

Riera Palmer, on August 10, 1908, it is stated that the vendor is the owner of a lot having a frontage of 9 yards and a depth of 26 yards, situated on Rosa Street and bounded on the east formerly by Nicomedes Sánchez and now by Margarita Avilés, and on the west by the extension of San Agustín Street. In the same deed it is stated that said lot is the remainder of a parcel allotted to the vendor in a partition executed before the same notary by the heirs of Doña Isabel and Don José Guenard y Carrié, on September 19, 1899, which parcel was segregated from an area of 7,122 yards and contained 478 square yards, or a main frontage of 18 yards on Rosa Street, to the north and a depth of 26 yards, being bounded on the right and rear by a lot and land belonging to the heirs of Doña Isabel Guenard, and on the left by the extension of San Agustín Street. As may be seen, the parcel of 478 square yards was bounded formerly by Nicomedes Sánchez and now by Margarita Avilés, who was the mother of plaintiff Mrs. Trujillo Lange. Thus in 1908, when the defendant purchased the said lot, his vendor gave as its boundary on the east the lot now owned by the plaintiffs and not the alley in question.

Plaintiff José Trujillo Lange himself in his testimony taken in 1931, answering questions asked by counsel for the defendant, stated that his house had been recently enlarged, about two years previously; that in performing such work a balcony was added to the western side and that most of the front, as claimed by the plaintiff, extended along Rosa Street. The engineer Acosta stated that plaintiffs' house fronts on Rosa Street and stands on the corner of an alley called Aguacate which lies to the west. To the oral and documentary evidence introduced must be added the certificate of the inspection or view taken by the judge who rendered judgment dismissing the complaint on the merits. The defendants have an unobstructed exit from their house through the front thereof leading to Rosa Street.

The plaintiffs argue that this is a case which should have been decided upon the facts; that the titles held by the parties should not have controlled the determination of the issue; and that the only question for the lower court to decide was one of fact and not of law, as to the right that the public or the plaintiffs might have in the Tendal street or alley. In support of their contentions they cite the case of *Fernández* v. *González*, 41 P.R.R. 719, wherein this court held that in restitutory interdicts only the fact and not the right of possession may be considered and determined; and that in an injunction proceeding to recover possession of the use of a road, evidence bearing on plaintiff's right to such use is not admissible. The fact should not be overlooked that the plaintiffs in the instant case seek the abatement of an alleged public nuisance and that they do not aver any private right to the use of the alley or road in question. By their allegations they maintain that a public thoroughfare is involved and that passage over the same should be free from any obstruction, because if the fence obstructing Tendal Street were allowed to remain there "the defendant would cause irreparable damage to the general public and to the plaintiffs, who would be prevented from using, as they have used from time immemorial, the said street." The existence of a servitude or public road from time immemorial is alleged, but as already stated, according to our Civil Code à servitude of passage can only be acquired by virtue of a title. In our opinion, the plaintiffs are bound to prove the public character of the road before they can succeed in obtaining the relief sought by them. The evidence shows that the defendant has performed continuous acts of possession over the said alley, and that only through mere tolerance has he permitted other people to pass over the same.

The plaintiffs urge that a public street is involved and that said street or road has been used by the public from time immemorial. It is not averred that this alley has been dedicated to the public by the defendant. The complaint is

devoid of any allegation setting forth any facts constituting a cause of action based on the theory that the land on which the alleged street lies was at any time dedicated as a public thoroughfare. No act of dedication appears from the evidence either. In *Jordán* v. *Rodríguez*, 32 P.R.R. 570, this court said:

"The statement of witness Santana leaves us somewhat in doubt as to whether the so-called sidewalk was used primarily for the purpose of travel or as an incident to the shelter afforded by the overhanging leaves of the building alongside. Something more of detail as to the purposes of the cousin and former owner of the building in constructing the 'sidewalk' would have been more to the point. It would also be interesting to know something more definite about the stairway at the end of the 'sidewalk', as, for instance, whether the steps were expressly designed and made by the former owner for the convenience of the public, or were a mere accident of construction, or were worn by time and weather or by public use, or were improvised by some public-spirited citizen as a means of access to this curiously constructed 'sidewalk'.

" *       *       '       *       *       *       *       *

"The owner of a house standing upon the land of another, if the owner of the soil does not object, may place thereon a sidewalk or any other structure available for use as such, and, if he chooses, dedicate the same to public use. But the occasional or more or less intermittent use by the public, for a period of sixteen or eighteen years, of a retaining wall or other structure erected for some purpose best known to the owner cannot, without more, operate such a dedication.

" *       *       *       *       *       *       *

"Nor do we find a scintilla of evidence to sustain the conclusion reached by the court below that the new alignment or widening of the street resulted in injury to other owners of property in a 'direct line toward the south.' It is, on the contrary, a most significant circumstance that none of these neighboring property owners has either joined petitioner in his protest or appeared as a witness in the case."

The evidence adduced by the plaintiffs and their own allegations lead to the conclusion that the public character of the alleyway is made to depend upon the use thereof by

the public from time immemorial. It is not alleged who was the owner of said land, how the road began to be used, how it was that it became a street, nor what rights and obligations pertained to the Municipality of Mayagüez rendering such place as a part of the city. The only allegations concerning the title to the land on which the alley is located were made by the defendant, and these allegations are supported by the evidence. The plaintiffs rely on the alleged use of the way from time immemorial. In the case of *Del Moral* v. *Muratti*, 34 P.R.R. 244, 248, the court said:

"The year 1890 is of decisive importance because that was the year when the Civil Code went into effect and since that time the servitude in question could be acquired only by virtue of a title, and in this case such a means of acquisition has not even been mentioned.

"The case of *Nido & Co.* v. *Alicea*, 27 P.R.R. 32, cited by the trial judge in his opinion, is not similar to the present case. There the party who could have been injured admitted that the law in force prior to the Civil Code was applicable and besides the testimony of very old people who testified to the use from time immemorial, admissions of a former owner of the servient tenement were produced. Here the district court found that the road was opened during the grinding seasons of 1893–1894, there were no admissions, and the testimony of the witnesses for the petitioner does not support her theory, that is, use from time immemorial.

"  *       *       *       *       *       *       *

"It is clear that the road which was being used was more convenient. The use of roads by tolerance is a matter of frequent occurrence in the rural districts of Porto Rico. Flooded rivers and streams, bad condition of certain country roads, short cuts, friendship, establishing of schools and stores at given places fear of provoking controversies or unfriendliness, desire to favor neighbors by making distance shorter and travel easier, and many other circumstances can be pointed to as causes for this condition. No doubt a similar situation and the idea of fixing and making certain something which is a privilege of great importance for one and an encumbrance of no less importance for the other were the causes that prompted the Spanish legislators to modify the law and the Portorican Legislature to let the modification stand. Hence, travel which is merely tolerated generally continues until there is abuse,

as the evidence showed there was in this case. Therefore, when one seeks to obtain an absolute and permanent right he knows that he must enter into a contract in order to acquire the right for an appropriate consideration, and the right so acquired can be secured as against third persons by recording it according to the provisions of the Mortgage Law. After 1890 the indefinite and vague conditions concerning this kind of a servitude disappeared in Porto Rico.''

To the testimonial evidence for the defendant, which clearly shows that there was no immemorial usage of the road, must be added the map of the city of Mayagüez of 1888 where, as was said before, the land now occupied by the alley was made to appear as ''shrubbery.'' After defendant purchased this land in 1908, he paved it in order to provide a passageway for his carriages.

In the case of *Giervolini* v. *Succession of Rodríguez,* 23 P.R.R. 808, the plaintiff brought an action for the abatement of an alleged private nuisance, under section 227 of the Code of Civil Procedure. There the questions of fact and of law were set forth by the court as follows:

''Defendants admitted the closing of the road but denied the existence of a servitude.

''The essential findings of the court below are that petitioner is the owner of the parcel of land first described in the petition; that the road, path or trail traversing the premises of respondents had been used for many years as a means of ingress and egress to and from the property of petitioner; that the same had been closed by respondents as alleged; that petitioner failed to show use or possession of the road from time immemorial as alleged, and, therefore, that the alleged acquisition of the right of way by prescription had not been established.

''The judgment rendered is to the effect that the law and the facts are against the petitioner and in favor of respondents and that the action be dismissed without specific pronouncement as to costs.

''Appellant does not question directly the correctness of any of the findings of the court below but insists that the court misunderstood the nature of the action and meaning and scope of certain allegations of the complaint, and went beyond the issues involved in passing upon the question of conflicting claims as to real prop-

erty rights. The argument assails the reasoning of the trial judge and the grounds upon which he rested his decision rather than the decision itself. The brief apparently proceeds upon some vague theory that any interference whatsoever with the use and enjoyment of property is a nuisance, regardless both of what constitutes a nuisance and of all rights of adjoining property owners—the inference being that the mere fact that respondents close a road or trail through their own property by building a fence across it on their own property, coupled with the circumstances that the adjoining property of petitioner is thereby deprived of its usual means of ingress and egress, which through nude tolerance or indulgence petitioner had been permitted to use for some indefinite period prior to such closure, gives him a right of action. We are not aware of any case which so holds nor of any legal principle that can sustain such a view.

"If, therefore, the court erred, as alleged, in construing the petition to mean interference with the use and enjoyment of the easement rather than of the alleged dominant state, we wholly fail to perceive what prejudice appellant has suffered through such error. The claim to the right of way is based solely and exclusively on the alleged immemorial use prior to the adoption of the Spanish Civil Code. Petitioner utterly failed to show title by prescription and there is not a scintilla of evidence or the remotest inference from any averment of the petition as to any other possible source of title or legal right of way."

In view of the clearness of the rights of the defendant, no great effort is necessary to form the conviction that the lower court weighed the facts and interpreted the law correctly. The use of the road from time immemorial, apart from the fact that it has not been proved, is not sufficient in itself to create a servitude. As stated by this court in *Garcia* v. *Garcia*, 25 P.R.R. 119, if mere tolerance does not create any right, it is not important to consider the element of time. The person who has voluntarily tolerated the act may at any time change his attitude and claim and obtain the full acknowledgment of his rights.

The third assignment of error is that the court held that the defendant has a right to fence and obstruct the aforesaid alley, the use of which by the public was merely permissive.

The fourth assignment is that the court failed to hold that the use of said alley, which the defendant designates as Tendal Street, involves an easement which may be protected by injunction. These assignments have already been disposed of in our opinion, in accepting the finding of the lower court as to the nonexistence of the servitude, and in concluding that mere tolerance in the use of the road does not deprive the defendant of his rights over the same.

The judgment appealed from should be affirmed.